## PEOPLE v CUMMINGS

Docket No. 67843. Submitted April 3, 1984, at Detroit.—Decided December 3, 1984.

Defendant, Ronald Cummings, and his codefendants, James Hill, Jessie L. Bryant and Philip N. Sims, were charged in the Recorder's Court for the City of Detroit with delivery or aiding and abetting in the delivery of a controlled substance, cocaine, and conspiracy to deliver the same. Although all four defendants were tried in one proceeding, only defendant Cummings elected to be tried by a jury whereas the other defendants elected a trial to the bench. At the close of the prosecution's proofs, each defendant moved for a directed verdict. The trial court, James E. Roberts, J., denied each motion as it pertained to the conspiracy counts. No evidence was presented on behalf of the defendants. Following closing arguments and instructions to the jury, the jury returned a verdict of guilty of both counts against defendant Cummings. The trial court, acting as factfinder, then announced its findings that the prosecutor had failed to prove beyond a reasonable doubt that defendants Hill, Sims or Bryant were guilty of conspiracy to deliver cocaine. The trial court did find that the prosecutor had sustained its burden of proving defendant Bryant guilty of delivery of cocaine. Thus, of the four defendants, only defendant Cummings was convicted of conspiracy. Defendant Cummings appeals. *Held:*

    1. The common-law rule of "no one-man conspiracy" in a

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conspiracy §§ 10, 13, 40.

[2, 3] 16 Am Jur 2d, Conspiracy § 39.

Rights of defendants in prosecution for criminal conspiracy to separate trials. 82 ALR3d 366.

[3] 16 Am Jur 2d, Conspiracy §§ 25, 26.

Prosecution or conviction of one conspirator as affected by disposition of case against coconspirators. 19 ALR4th 192.

[4] 76 Am Jur 2d, Trial §§ 1111 et seq., 1250 *et seq.*

[5] 75 Am Jur 2d, Trial § 241.

[6] 5 Am Jur 2d, Appeal and Error § 880.

29 Am Jur 2d, Evidence §§ 320, 327.

[7] 75 Am Jur 2d, Trial § 483.

joint trial of all conspirators is of continued vitality in Michigan. However, given the unusual situation of this case where, although only one trial was conducted, separate factfinders were involved, the common-law rule does not apply and defendant Cummings is not entitled to reversal of his conspiracy conviction. The inconsistent findings of the separate factfinders do not violate the common-law "no one-man conspiracy" rule.

2. There was no inherent defect or inconsistency between the different conspiracy verdicts because two triers of fact were involved. Thus, the common-law rule was inapplicable.

3. Although error occurred in regard to some of the prosecutor's remarks during closing argument, the remarks were brief, were not repeated or emphasized and were the subject of a timely and specific cautionary instruction, therefore, the error was harmless beyond a reasonable doubt.

4. There is ample evidence that the trial court recognized and properly exercised its discretion to admit or suppress the evidence of prior convictions of defendant Cummings.

5. While the trial court should consider the effect on the decisional process should the defendant not take the stand for fear of impeachment, an abuse of discretion will not be found in regard to a determination to admit evidence of a defendant's prior conviction absent some information in the record that trial counsel sought to inform the court of the substance of the defendant's proposed testimony or that the court was informed that the defendant had no alternative mode of presenting his defense.

6. The testimony at trial was sufficient to establish the elements of aiding and abetting the delivery of cocaine. There was sufficient evidence to sustain the delivery of cocaine conviction, therefore, the trial court did not err in failing to direct a verdict of acquittal on that charge.

Affirmed.

1. CONSPIRACY — EVIDENCE.

The Michigan conspiracy statute requires proof of an agreement between two or more persons and requires proof of the specific intent to combine with others to do what is unlawful (MCL 750.157a; MSA 28.354[1]).

2. CONSPIRACY — COMMON LAW RULE — SEPARATE TRIALS — JOINT TRIALS.

The common-law rule of "no one-man conspiracy" in a joint trial of all conspirators is of continued vitality in Michigan; the purpose of the rule is to prevent the enforcement of inconsis-

tent verdicts which result in a joint trial when a single fact-finder simultaneously determines the existence of an agreement as to one conspirator but finds no agreement as to the other alleged conspirators; the common-law rule does not apply in separate trials where the evidence is separately evaluated or where a joint trial is conducted but separate factfinders independently and separately evaluate the evidence prior to reaching their respective determinations in regard to the alleged conspirators.

3. CONSPIRACY — COMMON LAW RULE — VERDICTS.

There is no difference, in determining the applicability of the common-law rule of "no one-man conspiracy", between a dismissal based upon a directed verdict for insufficient evidence or a jury verdict of acquittal; each amounts to a determination that no conspiracy existed.

4. TRIAL — FACT-FINDING — VERDICTS.

The factfinder, be it jury or judge, is the sole judge of the facts as they pertain to the defendant whose guilt or innocence it is to decide; the factfinder may choose to believe or disbelieve any witness or any evidence presented in reaching a verdict.

5. CRIMINAL LAW — EVIDENCE — PROSECUTORIAL COMMENT — DEFENDANT'S SILENCE.

A prosecutor may permissibly argue that the evidence presented is uncontradicted, even though the defendant is the only one who could have contradicted or challenged the evidence; an argument which creates the inference that the defendant must prove something or one in which the defendant is called upon to explain damaging evidence may tend to shift the burden of proof, resulting in error.

6. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACHMENT.

A trial court faced with a determination regarding the admission of evidence of the defendant's prior criminal conviction should consider the effect on the decisional process should the defendant not take the stand for fear of impeachment; an abuse of discretion in regard to a determination to admit evidence of the defendant's prior conviction will not be found where there is no indication in the record that defense counsel sought to inform the court of the substance of the defendant's proposed testimony or that defendant had no alternative mode of presenting his defense.

7. CRIMINAL LAW — TRIAL — DIRECTED VERDICTS.

A trial court considering a motion for a directed verdict is to view

the evidence presented in the light most favorable to the prosecutor and determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Linda D. Ashford,* for defendant on appeal.

Before: ALLEN, P.J., and V. J. BRENNAN and R. M. DANIELS,* JJ.

ALLEN, P.J. On June 30, 1981, following a jury trial, Ronald Cummings was convicted of delivery or aiding and abetting in the delivery of a controlled substance, cocaine, MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b), and conspiracy to deliver the same, MCL 750.157a; MSA 28.354(1). On September 8, 1982, defendant was sentenced to three years probation, the first year to be spent in the Detroit House of Correction. Defendant appeals as of right.

Defendant was tried jointly with James Hill, Jessie Lee Bryant and Philip Neal Sims in a trial beginning on June 22, 1981. Although all four defendants were tried in one proceeding, only defendant Cummings elected to be tried by a jury, whereas the other defendants elected a trial to the bench. Although the date of the offense was listed on the information as August 30, 1979, testimony at trial began with events occurring on August 23, 1979.

Melvin Turner testified that on August 23, he was employed as a sergeant for the Wayne County

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Sheriff's Department. He also owned a store in Detroit and, on August 23, he was approached by defendant Hill who informed Turner that he had access to cocaine and asked if Turner knew anyone who wanted to buy some. After relaying that information to Turner, Hill left a phone number where he could be reached. After Turner received authorization to pursue the case, Sergeant Turner outlined the details of his conversation with Hill with Officer Arelia Pendergrass and gave her the number supplied by Hill.

Pendergrass testified that on August 30, 1979, she called the number given to Sergeant Turner and asked for "Jamo", which is apparently an alias used by James Hill. She stated that she wanted to buy a quarter ounce of cocaine. She was instructed to call a second number. When she called that phone number, she was told to meet that individual, Ron, at defendant Hill's house. Pendergrass then called defendant Hill and was given his address. After speaking with Sergeant Turner and after arrangements for surveillance were made, Pendergrass proceeded to defendant Hill's residence. There she was met by defendant Cummings who informed her that they would have to go to another location to obtain the cocaine. They left in Pendergrass's vehicle and defendant Cummings directed her to a house on Mendota Street.

Pendergrass gave defendant Cummings $450 of prerecorded Secret Service funds and remained in the car while defendant entered the residence. Defendant returned a short while later and informed Pendergrass that they would have to come back later because the package had not yet arrived. After driving away, Pendergrass asked defendant about the $450 and told him that she would have to have the money back until the

cocaine was delivered. They returned to the Mendota address and both individuals were admitted by defendant Bryant. After speaking with Bryant, Pendergrass and defendant Cummings left the house and, pursuant to a pre-arranged signal given by Officer Pendergrass, the surveillance officers arrested defendant Cummings.

Pendergrass then returned to the Mendota Street address with Officer Curlie Thompson, whom she introduced to Bryant as her boyfriend. They were told by Bryant that they could wait at the house after Thompson indicated that he wanted either the money or the cocaine. At some point, prior to the arrival of the drugs, Pendergrass left the residence. Shortly thereafter, defendant Bryant stated "He's here now" or "The package is here now" and defendant Sims was admitted into the residence. Sims and Bryant walked into the kitchen, Thompson followed them approximately two to three minutes later. Defendant Sims was no longer present in the kitchen; Thompson had not seen him leave. Defendant Bryant then displayed an open tinfoil packet containing a white powdery substance to Thompson.

At the close of the prosecution's proofs, each defendant moved for a directed verdict. The trial court denied each motion as it pertained to the conspiracy counts. No evidence was presented on behalf of the defendants. Following closing arguments and instructions to the jury, the jury returned a verdict of guilty of both counts against defendant Cummings. The trial court, acting as factfinder, then announced its findings and verdicts as to the remaining three defendants. The trial court found that the prosecutor had failed to prove beyond a reasonable doubt that defendants Hill, Sims or Bryant were guilty of conspiracy to deliver cocaine but found that the prosecutor had

sustained its burden of proving defendant Bryant guilty of delivery of cocaine. Thus, of the four defendants, only defendant Cummings was convicted of conspiracy.

Defendant argues, based on the "no one-man conspiracy" rule, that because all of the alleged co-conspirators but himself were acquitted, his conviction must be reversed. Although we are aware of no conspiracy case involving procedural facts similar to those of the present case, a joint trial of the alleged co-conspirators with separate factfinders, we find the recent case of *People v Anderson,* 418 Mich 31; 340 NW2d 634 (1983), to be instructive. The question raised is of first impression.

The Michigan conspiracy statute, MCL 750.157a; MSA 28.354(1), requires proof of an agreement between two or more persons and requires proof of the specific intent to combine with others to do what is unlawful. *Anderson, supra; People v Atley,* 392 Mich 298; 220 NW2d 465 (1974). Thus, the common-law rule of "no one-man conspiracy" in a joint trial of all conspirators is of continued vitality in this state. However, the application of the rule in the context of separate trials and, we believe, in the case of a joint trial with separate factfinders presents a different situation.

In *Anderson,* Justice RYAN, writing for the majority, found the common-law rule to be inapplicable where the alleged co-conspirators are tried separately "because there is no inherent defect when the separate juries return different verdicts in the separate trials". *Id.,* p 38. In determining the applicability of the "no one-man conspiracy" rule, there is no difference between a dismissal based upon a directed verdict for insufficient evidence or a jury verdict or acquittal; each amounts to a determination that no conspiracy existed. Although the conspiracy charge was dismissed

upon a motion for directed verdict in the trial of the first co-conspirator, the majority determined that Anderson's later conviction of conspiracy could properly stand inasmuch as the conspirators were tried separately and the earlier dismissal had no bearing on the quality of proof introduced in Anderson's subsequent trial.

Justice LEVIN, concurring in reversal, wrote separately to distinguish between inconsistent legal and inconsistent factual determinations of the existence of a conspiracy. Although the question of sufficiency of the evidence concerns the factual support for the charge, it is a legal question capable of but one correct determination. On the other hand, if the evidence of a conspiracy is sufficient to warrant submission to the factfinders, the factfinders have the power to return inconsistent and asymmetrical verdicts. *Id.,* p 44.

In the present case, there was a joint trial of four alleged co-conspirators; without more, it appears that the common-law rule would apply. However, given the unusual situation that although only one trial was conducted separate factfinders were involved, we believe that the common-law rule does not apply and that defendant Cummings is not entitled to reversal of his conspiracy conviction. Under the minority approach espoused in *Anderson* by Justice LEVIN, once the legal determination was made that sufficient evidence had been presented by the prosecutor to withstand motions for directed verdict and to submit the cases to the respective factfinders, the jury and the judge were free to reach inconsistent verdicts. It is not for this Court to determine which of the two results is correct or to attempt to reconcile the verdicts to bring some unanimity into play. The factfinder, be it jury or judge, is the sole judge of the facts as they pertain to the

defendant whose guilt or innocence it is to decide. It is beyond peradventure that the factfinder may choose to believe or disbelieve any witness or any evidence presented in reaching a verdict. See, *e.g., People v Lewis,* 415 Mich 443; 330 NW2d 16 (1982); *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975). Applying the LEVIN approach, the inconsistent findings by the separate factfinders do not violate the common-law "no one-man conspiracy" rule.

Analysis of the present facts under the majority opinion in *Anderson* similarly convinces us that reversal of defendant Cummings' conspiracy conviction is not warranted. Although the majority opinion indicates that the "inapplicability of the 'no one-man conspiracy' rule arises from the fact of separate trials", *Anderson, supra,* p 38, the opinion also refers to the fact that in separate trials the evidence is "separately evaluated". The purpose of the common-law rule was to prevent the enforcement of inconsistent verdicts which resulted in a joint trial when a single factfinder simultaneously determined the existence of an agreement as to one conspirator but found no agreement as to the other alleged conspirators. That situation is very dissimilar to the facts of the present case where, although a joint trial was conducted, separate factfinders considered the evidence and reached different results.

Given the factual posture of this case, we find the "no one-man conspiracy" rule to be inapplicable here even though a single trial was involved. While at first glance this result may seem contrary to the holding in *Anderson,* we are convinced that our decision is consistent with the rationale and theoretical basis of that decision. Here, the different verdicts were reached by different factfinders who independently and separately evalu-

ated the evidence prior to reaching their respective determinations. Because two triers of fact were involved, we perceive no inherent defect or inconsistency between the different verdicts. Thus, we find the common-law rule to be inapplicable and find no basis to vacate defendant Cummings' conspiracy conviction.

Next defendant argues that a comment by the prosecutor in closing argument[1] constituted an impermissible comment upon defendant's failure to take the stand, violated defendant's privilege against self-incrimination and improperly shifted the burden of proof. Defense counsel did not object to the remark at that specific time; the trial judge, however, instructed the jury at the conclusion of the prosecutor's argument that the prosecutor had the burden of proof and that defendant had no obligation in that regard. Defense counsel's subsequent motion for a mistrial was denied. The court found the comment by the prosecutor to be improper but held that the cautionary instruction was adequate. We agree.

A prosecutor may permissibly argue that the evidence presented is uncontradicted, even though the defendant is the only one who could have contradicted or challenged the evidence. *People v Parker,* 307 Mich 372; 11 NW2d 924 (1943); *People v Peace,* 48 Mich App 79; 210 NW2d 116 (1973). An argument which creates the inference that the defendant must prove something or one in which the defendant is called upon to explain damaging evidence may tend to shift the burden of proof, resulting in error. *People v Heath,* 80 Mich App 185; 263 NW2d 58 (1977). In the present case, the

---

[1] The prosecutor made the following statement: "Well, now we've reached the stage of the proceedings called closing or the summary, and the testimony's all in, and I might add it's rather one-sided. It seems that the People *[sic]* only side that had any case to present."

comment was brief, was not repeated or emphasized and was the subject of a timely and specific cautionary instruction. Moreover, the comment came at the conslusion of four days of trial during which only the prosecutor presented evidence, the four co-defendants resting without introducing any evidence. While we do not condone the use of language similar to that utilized in the present case, we believe that although error occurred, it was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Defendant also argues that reversal is required because the trial court failed to positively indicate and exercise his discretion in ruling that, should defendant take the stand, he could be impeached by evidence of a prior conviction for breaking and entering. Prior to trial, defense counsel's motion to suppress evidence of a prior felonious assault conviction was granted. In his argument for suppression of evidence of the breaking and entering conviction, counsel acknowledged that the conviction did have some connection with truth and veracity but argued that due to the age of the conviction (eight years prior to the time of trial) it should be suppressed.

Our review of the transcript reveals that, although the trial judge did not specifically or individually articulate each factor considered in his decision, he was aware of the relevant factors and properly determined that the conviction could be utilized for impeachment purposes. See, MRE 609 and *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978). Defense counsel himself noted that the prior conviction involved a theft component and that the prior conviction was obviously dissimilar to the charged crimes. Moreover, at the time that defendant Cummings sought to suppress evidence of his prior convictions, counsel for defen-

dant Bryant also moved to suppress evidence of a prior conviction. Thus, reading the entire colloquy, we find ample evidence that the trial court recognized and properly exercised its discretion to admit or suppress the evidence of the prior convictions.

Contrary to appellate counsel's assertion, we do not find that reversal is warranted because the trial court's ruling was fatal to the defense and prevented defendant from taking the stand and testifying on his own behalf. While the trial court should consider the effect on the decisional process should the defendant not take the stand for fear of impeachment, there is no indication in the record that trial counsel sought to inform the court of the substance of defendant's proposed testimony or that the court was informed that defendant had no alternative mode of presenting his defense. Absent such information, we find no abuse of discretion. See, *e.g., People v Casey,* 120 Mich App 690; 327 NW2d 337 (1982); *People v Wilson,* 107 Mich App 470; 309 NW2d 584 (1981).

Defendant claims that insufficient evidence was presented to support defendant's conviction of delivery of cocaine and that the trial court erred in failing to direct a verdict of acquittal on that charge. When considering whether a motion for a directed verdict should be granted, the trial court is to view the evidence presented in the light most favorable to the prosecutor and determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980). The testimony at trial was sufficient to establish the elements of aiding and abetting the delivery of cocaine. Defendant's comments to Officer Pendergrass during their phone conversation

concerning the "bomb" nature of the cocaine, his conduct in meeting with Pendergrass and directing her to the Mendota address to pick up the cocaine, his act of taking the money into the home and later introducing Pendergrass to defendant Bryant, coupled with the later delivery of the cocaine to Officer Thompson, provide sufficient evidence to sustain the conviction. While it is true that Thompson never specifically stated that the cocaine had been "delivered" to him, he did testify that he received the cocaine. Defendant's actions facilitated and assisted in the delivery. *People v Berry,* 101 Mich App 399; 300 NW2d 575 (1980).

We have reviewed defendant's allegations of error and find none which merit reversal. We affirm both the conspiracy and the delivery of cocaine convictions.

Affirmed.