# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 22, 2015

v

TIMOTHY MICHAEL SANDERS,

Defendant-Appellant.

No. 314765
Wayne Circuit Court
LC No. 12-008256-FC

Before: K. F. KELLY, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, assault with intent to commit murder (AWIM), MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a fatal shooting on January 16, 2012. Shortly before 3:00 p.m., Darryl Smith heard a commotion and went outside his home to see what was happening. He saw some women fighting in the street. Darius Kendrick, who was Smith's stepfather, was pulling the female combatants apart. One of the women involved, Diamond Randall, called defendant, who was her cousin, and told him that she was upset about how Kendrick had thrown her to the ground while breaking up the fight. After the fight broke up, defendant arrived at the scene in a Range Rover. Smith knew defendant by his nickname, "Big Tim," and had seen him on several prior occasions. Defendant spoke to some women near the scene of the fight, then approached Smith and Kendrick. He was aggressive and told Kendrick "to keep his hands to his self." Smith and Kendrick backed away, but defendant produced a handgun from his right pocket and began to shoot, firing "[m]ore than seven" times. Smith was shot once in the foot. Kendrick was fatally shot in the chest, stomach, and leg. Defendant was "[a]bout three or four feet" from Smith and Kendrick when he shot them. Smith testified that neither he nor Kendrick had a gun. After the shooting, defendant ran back to the Range Rover and left the scene. Smith had "no doubt" about his identification of defendant as the shooter. When the police arrived, Smith told them that "Big Tim" had shot him. Initially, defendant could not be located. Eventually, he was arrested by the United States Marshals Service at a relative's home in Marion County, Ohio.

-1-

## II. DISCUSSION

Defendant argues that a combination of errors impermissibly suggested to the jury that he was a previously convicted felon and had broken the law by possessing a firearm when he was not permitted to do so. We disagree.

During jury selection, the trial court mistakenly told the jury that defendant was charged with felon in possession of a firearm, which was a charge that had been dismissed at the preliminary examination. The trial court subsequently corrected itself and read the proper charges. But later, during trial, the prosecution elicited testimony that Smith had seen defendant in possession of a gun on an occasion *before* the shooting. Defendant contends that, in combination, these two errors constituted improper bad acts evidence under MRE 404(b), which provides, in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

Defendant waived the alleged error during jury selection by affirmatively approving the selected jury. See *People v Clark*, 243 Mich App 424, 426; 622 NW2d 344 (2000). We review the trial court's evidentiary decision for an abuse of discretion, but review de novo any "preliminary legal issues regarding admissibility." *People v Wood*, 307 Mich App 485, 500; 862 NW2d 7 (2014).

Defendant's argument fails for a number of reasons. First, the trial court's mistaken recitation of the felon-in-possession charge was not *evidence*; thus, defendant's proposed application of MRE 404(b) to the trial court's jury instruction is wholly inappropriate. Second, the trial court immediately corrected its misstatement of the charges. Third, defendant assumes that the jury inferred prior bad acts by defendant, but such an inference is unlikely. Although lawyers and judges may be familiar with the elements of felon-in-possession, most jurors are probably not. That is, a typical juror would not have inferred defendant had a prior felony conviction that made him ineligible to possess a firearm although he possessed one. Fourth, the trial court administered proper jury instructions which cured any prejudice. Since jurors are presumed to follow their instructions, any unfair prejudice resulting from improper evidence of a defendant's prior bad acts can be dispelled by proper jury instructions. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). The trial court struck the testimony by Smith that defendant had previously possessed a firearm, and instructed the jury to disregard it. Further, the jury was instructed (1) not to consider the trial court's comments or the fact that defendant was charged with crimes as evidence, (2) defendant was presumed innocent, (3) it should only consider properly admitted evidence, and (4) any stricken testimony must be disregarded. Thus, any prejudice to defendant was dispelled, and reversal is unwarranted. See *People v Snyder (After Remand)*, 301 Mich App 99, 111; 835 NW2d 608 (2013).

Defendant next argues that the trial court erred by failing to administer a voluntary manslaughter instruction. We disagree. At trial, defense counsel agreed with the trial court's decision that a voluntary manslaughter instruction was unwarranted. Thus, defendant waived this issue for appellate review; his waiver extinguished any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

But even if defendant had not waived this issue, we would conclude that a voluntary manslaughter instruction was not supported by the evidence. See *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013), quoting *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). As discussed in *Mitchell*:

> To prove that a defendant committed voluntary manslaughter, " 'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' " *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012), quoting *Mendoza*, 468 Mich at 535[]. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. *Mendoza*, 468 Mich at 536[]. In *People v Tierney*, 266 Mich App 687; 703 NW2d 204 (2005), this Court held that "[t]he degree of provocation required to mitigate a killing from murder to manslaughter 'is that which causes the defendant to act out of passion rather than reason.' " *Id.* at 714-715[], quoting *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Further, "[i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Tierney*, 266 Mich App at 715[] (citation and quotation marks omitted). Whether the provocation was reasonable is a question of fact; but if "no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id.* (citation and quotation marks omitted). [*Mitchell*, 301 Mich App at 286 (third alteration in original).]

In determining whether a voluntary manslaughter instruction is appropriate, a reviewing court may consider the theory of the case advanced by the defendant at trial. See *Mendoza*, 468 Mich at 546-548.

The trial court's decision not to submit a voluntary manslaughter instruction to the jury was proper because there was insufficient evidence of legally adequate provocation. There was no evidence of a physical confrontation between defendant and Kendrick. There was no evidence that anyone threatened defendant, brandished a weapon at him, or shot at him, although shell casings from more than one caliber of weapon were found at the scene. There was no evidence of a verbal confrontation between defendant and Kendrick that would cause a rational person to act in the heat of passion. See *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009). And even if Kendrick's alleged assault of defendant's cousin was legally adequate provocation, the record indicates that a sufficient "cooling off" period had elapsed "during which a reasonable person could have controlled his passions." See *People v Pouncey*, 437 Mich 382, 392; 471 NW2d 346 (1991). The cousin called defendant, who drove to the scene of the shooting and spoke with several people before confronting and ultimately shooting Kendrick and Smith. During that interlude, a reasonable person could have reflected on the situation and controlled his passions. Thus, the trial court correctly concluded that a voluntary manslaughter instruction was unwarranted. Accordingly, defendant's ineffective assistance of counsel argument premised on his counsel's agreement with the trial court that a voluntary manslaughter instruction was not warranted is also without merit. See *People v Clark*, 274 Mich App 248, 258; 732 NW2d 605 (2007).

Next, defendant argues that the prosecution improperly shifted the burden of proof to the defense by improperly asking a police witness if defense counsel had requested ballistics testing on shell casings recovered at the scene and by commenting in closing argument that defendant "did not testify if he had ever owned or fired a gun or explain where he went after the shooting." We disagree.

While defendant timely objected to these alleged instances of misconduct, defendant failed to request a curative instruction after either objection. Because "[t]he goal of a defense objection to improper remarks by the prosecutor is a curative instruction," appellate review of such remarks is generally precluded where the defendant failed to request a curative instruction "unless the prejudicial effect of the remark[s] was so great that it could not have been cured by an appropriate instruction." *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993) (citations omitted). Likewise, reversal is unwarranted where a "curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003) (citations omitted).

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Prosecutorial arguments must be viewed "in light of defense arguments and the relationship they bear to the evidence admitted at trial," *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008), and the propriety of such arguments is dependent on "the particular facts of each case," *Callon*, 256 Mich App at 330.

First, defendant claims the prosecution shifted the burden of proof by asking a police witness, "Did the defense attorney ever call you and say I would like to have these bullets examined, can you see what you can do?", to which the officer responded, "No he did not." Defense counsel objected, arguing that the prosecution's question shifted the burden of proof to the defense, and the trial court sustained that objection, ruling that the question was improper. We agree with defendant that this question improperly shifted the burden of proof to him. However, any prejudicial effect arising from this single and brief question was not so great that it could not have been cured by an appropriate instruction. See *Cross*, 202 Mich App at 143. Accordingly, reversal is unwarranted. See *Callon*, 256 Mich App at 329-330.

Second, defendant argues that the prosecution impermissibly shifted the burden of proof with the following remarks during closing argument:

The defense is dealt a bad hand because [defendant] arrives at the scene [of the shooting] angry, summoned by the girls. He shows up with a weapon. He fires the gun, he runs away, he goes to Ohio.

And let's talk about his testimony now. In all of my years, 26 years as a prosecutor, 300 murder cases. Never, never has a defense been, has a defendant been called to the witness stand, ask[ed] his name; did you know the victim; did you talk to him; no further questions. I mean, that's a prosecutor's dream because we can't comment upon a defendant's silence. When a defendant doesn't take the stand, we can't say to you, ladies and gentleman, why didn't he take the stand? Why didn't he tell you where he was at that date? Why didn't he tell you whether

-4-

or not he's ever owned a gun? Why doesn't he tell you whether, whether he's ever fired a gun? Why didn't he tell you where he went afterward? Where did he do [sic] afterward? Where did he go the next day? Why was he in Ohio? Why did he have his attorney say he'd turn him in and he didn't turn himself in? So this guy takes the stand, it's a prosecutor's dream. It's a one in a million. One in a million.

\* \* \*

It's a one in a billion. It'll never happen again. So we made history here. [Defense counsel] called his client and he places him under oath and never asked him[,] did you shoot [Kendrick]? Never asked him. Calls him as a witness. I don't have to ask him anything. [Defense counsel] calls it [his] trick. This trial is not about tricks. This guy takes the witness stand, he's looking at you and he never says I didn't do it. I didn't do it. And if he didn't do it[,] he would have told you that. [Defense counsel] didn't even ask him[,] did you do it[?] He didn't even say to you why he arrived when he arrived. He doesn't say to you[,] I went to Ohio for other reasons.

Because defendant elected to testify, the prosecution's argument was proper. Although the constitutional right against self-incrimination prevents the prosecution from commenting on a criminal defendant's *refusal* to testify, "[i]n general, where a defendant 'takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . .' " *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995) (footnote omitted), quoting *Brown v United States*, 356 US 148, 154; 78 S Ct 622; 2 L Ed 2d 589 (1958). Moreover, prosecutorial commentary on a testifying defendant's failure to present evidence to corroborate a defense theory is proper and not "violative of due process." *Fields*, 450 Mich at 112. "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *Id*. at 115.

Defendant's theory of the case was actual innocence—that someone else was the shooter. The prosecutor argued that, although defendant testified, he provided no corroboration for that defense theory. While it is true that the prosecutor failed to cross-examine defendant about his failure to provide such corroboration, defendant has cited no legal authority for his claim that the prosecution's failure to cross-examine a testifying defendant precludes it from arguing inferences that arise out of the defendant's testimony during *direct* examination. The prosecution's argument did not improperly shift the burden of proof. Instead, it questioned why defendant, having elected to testify, presented no testimony to support his defense. That is, defendant advanced a theory of actual innocence and testified at his trial, yet he did not corroborate his defense theory. The prosecutor's "argument on the inferences created does not shift the burden of proof." *Id*.

Next, in his Standard 4 brief, defendant argues that he is entitled to a new trial because of newly discovered evidence. After we remanded this matter for an evidentiary hearing, the trial court denied defendant's motion for a new trial on this ground. After review of the trial court's

decision for an abuse of discretion, we disagree with defendant's claim and affirm the trial court. See *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

> As our Supreme Court held in *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003):

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) the new evidence makes a different result probable on retrial. *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996); MCR 6.508(D). [*Cress*, 468 Mich at 692.]

"The defendant carries the burden of satisfying all four parts of this test." *Rao*, 491 Mich at 279. Such motions are generally disfavored because "in fairness to both parties and the overall justice system, the law requires that parties secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *Id.* at 280. Indeed, "[i]t is the obligation of the parties to undertake all reasonable efforts to marshal *all* the relevant evidence for [] trial. Evidence will not ordinarily be allowed in installments." *Id.*

Defendant argues that the testimony of a newly discovered eyewitness, Sedrick Bell-Gill, would change the outcome on retrial; thus, the fourth part of the *Cress* test was met. At the postconviction evidentiary hearing, Bell-Gill testified that he was present during the shooting incident and that defendant's half-brother Timothy Carpenter was the shooter, not defendant. However, the trial court denied defendant's motion for a new trial, holding that "Bell-Gill's testimony would not render a different result probable on retrial." The trial court reasoned that Bell-Gill's testimony at the evidentiary hearing was contradicted by "overwhelming evidence" of defendant's guilt presented by the prosecution at trial:

> First, Mr. Smith's identification was made reliable when he testified that he knew [d]efendant, having seen him around the neighborhood on a number of occasions. Second, the prosecutor further bolstered Mr. Smith's eyewitness account by presenting the testimony of Officer Ryan Paul, who said that when he arrived on the scene and spoke with Mr. Smith, that Mr. Smith told him that [d]efendant was the shooter. Third, and most notably, the prosecutor presented the testimony of the medical examiner, Dr. Leigh Hlavaty. Dr. Hlavaty testified that Mr. Kendrick's gunshot wounds entered his body from the front, which corroborated Mr. Smith's testimony, and contradicts the testimony of Mr. Bell-Gill, who said that while [d]efendant was in front of the victims, the shooter was behind the victims. Additionally, the prosecutor presented evidence that [d]efendant could not be located after the incident, eventually being arrested in Ohio, which supports the inference that [d]efendant had a consciousness of guilt. Taken in its totality, the evidence presented by the prosecutor was overwhelming, and is contradicted by the testimony of Mr. Bell-Gill. Therefore, the Court finds that a different result is not probable on retrial. Defendant is not entitled to a new trial. [Footnotes omitted.]

It further reasoned that Bell-Gill's testimony at the evidentiary hearing was "incredible."

The trial court did not abuse its discretion by denying defendant's motion for a new trial premised on this purported "newly discovered eyewitness." Since witness credibility falls within the sound discretion of a trial court considering a motion for a new trial, it was proper for the trial court to evaluate Bell-Gill's credibility, and it would be improper for this Court to second-guess that credibility determination. See *Cress*, 468 Mich at 692, 694. Indeed, we afford particular deference to credibility determinations made by a trial court judge where, as here, a conflict between the testimony of two witnesses is involved. See *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). Bell-Gill's testimony is directly contrary to Smith's eyewitness account and identification of defendant as the shooter. The trial court, with its unique opportunity to appraise the credibility of both Bell-Gill and Smith, found that Bell-Gill's testimony was "incredible." It further concluded that his testimony was inconsistent with his prior statement to the FBI and with the physical evidence. Moreover, even if believed, Bell-Gill's testimony was not strong evidence. He admitted that he saw only one shot fired by Carpenter, and did not actually witness whether that shot struck anyone or whether Carpenter fired additional shots. But Smith clearly identified defendant as the shooter and witnessed the entire event. As the trial court concluded, Bell-Gill's testimony did not make a different result probable on retrial. See *Cress*, 468 Mich at 692. Thus, the trial court did not abuse its discretion when it denied defendant's motion for a new trial. See *Rao*, 491 Mich at 279.

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Henry William Saad