# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD WESLEY JILES,

Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No. 337427
Berrien Circuit Court
LC Nos. 2016-002223-FC,
           2016-002224-FH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Ronald Wesley Jiles, appeals as of right his jury trial convictions of assault and battery, MCL 750.81; being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a concealed weapon in a vehicle, MCL 750.227(2); resisting and obstructing a police officer, MCL 750.81d(1); injuring or harassing a police dog, MCL 750.50c; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(v); possession of marijuana, MCL 333.7403(2)(d); third-degree fleeing and eluding, MCL 257.602a(3)(a); reckless driving causing serious impairment of bodily function, MCL 257.626(3); second-degree fleeing and eluding, MCL 257.602a(4)(a); and operating a vehicle with the presence of a controlled substance in his system causing serious impairment of a bodily function, MCL 257.625(5)(a). We affirm.

This case arises out of a police chase involving a semitruck and several police officers on I-94 in Indiana and Michigan. Jiles, a truck driver, was making a delivery from his home state of California to Uxbridge, Massachusetts. Jiles was spotted driving erratically on I-94 in Indiana and failed to stop when Indiana police officers signaled for him to pull over. After he entered Michigan, still pursued by the Indiana police officers, additional officers from several Michigan law enforcement agencies joined the chase. Jiles swerved at officers who attempted to pull their patrol cars next to the truck and officers who attempted to deploy "stop sticks" from the side of the road. Jiles eventually came to a stop on an exit ramp after a Michigan State Police trooper shot one of the semitruck's rear tires. A blood test showed that Jiles had both methamphetamine and cocaine in his system.

Jiles first argues on appeal that he was denied his due process rights because the prosecutor made comments regarding his postarrest silence in closing arguments contrary to his Fifth Amendment rights, which also shifted the burden of proof to the defense. We disagree.

Jiles failed to object to the prosecutor's comments at trial.[1]   Therefore, this issue is unpreserved.   Unpreserved issues of alleged prosecutorial misconduct[2] are reviewed for plain error.   *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).   Under plain-error review, the defendant must demonstrate that "1) [an] error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."   *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).   "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."   *Id*.   "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial."   *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).   Claims "of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context."   *Id*. at 64.

At trial, Jiles admitted to ingesting cocaine on the morning in question, but denied that he ingested any methamphetamine.   He appeared to believe that someone put it in his coffee or that it was mixed with the cocaine that he purchased.   On cross-examination, the prosecutor questioned Jiles regarding his claim that he did not intentionally ingest the methamphetamine:

> *Q*. And all of this is the first time we're hearing this about this; right?
>
> *A*. What do you mean?
>
> *Q*. The first time you're claiming the meth, no idea about it or anything like that; right?
>
> *A*. Yeah, I don't—I don't—I don't get down on meth, period.
>
> *Q*. Okay. This is the first time we're hearing this.
>
> [*Defense Counsel*]: Objection, you Honor. I don't know who "we" are.
>
> *The Court*: Sustained.

---

[1] During Jiles's cross-examination, defense counsel objected when the prosecutor asked Jiles about the timing of his exculpatory assertions.   However, the prosecutor's closing arguments were not challenged below.

[2] As recognized by this Court in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), although the phrase "prosecutorial misconduct" is used as a term of art in criminal appeals, it is a misnomer when used to describe technical or inadvertent errors that do not involve illegal conduct or other activity violating the rules of professional conduct.   Allegations of less extreme error—i.e., error that would not warrant discipline under the rules of professional conduct—are more accurately described as claims of "prosecutorial error."

[*Prosecutor*]: Thank you. Nothing further.[3]

In closing argument, the prosecutor stated:

> People today like things convenient. The defendant likes things convenient for him; convenient defense that he has. Convenient that "from the time of my criminal actions in Indiana and Michigan start, I can't remember a thing until someone's doing something wrong to me and putting me in cuffs." Can't remember a single thing; that's what he's claiming now. It's convenient.

In addition, the prosecutor argued:

> The other case involves the drugs, the possession of the drugs. He admitted to possessing them. He knowingly possessed those drugs. He claims now he didn't know it was methamphetamine. I'd ask you to use your common sense in whether or not you believe that. He claims he absolutely knew it was cocaine, but he knew that was methamphetamine in there too. And he took both of them knowingly and willingly.

Finally, the prosecutor remarked: "And after seven months, what he tells you is that 'I can't remember anything from that time frame.' So, in essence he cannot deny anything on the video or what the police officers testified."

We disagree that these comments constituted an impermissible argument regarding Jiles's postarrest silence. Rather, we view them as an appropriate attack on the credibility of Jiles's testimony. See *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002) ("Any party may attack the credibility of a witness."). The prosecutor did not expressly comment on defendant's statements or lack of statement to the police before trial. Instead, the prosecutor focused on what defendant explained "now"—that is, at trial—and argued that defendant's testimony was conveniently limited and unworthy of belief. Accordingly, we find no error in the prosecutor's closing argument. See *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997) ("A prosecutor may, however, argue from the facts that . . . the defendant . . . is not worthy of belief.").

Nor do we agree that the challenged comments shifted the burden of proof to Jiles to prove his innocence. "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). As a result, the prosecutor's comments regarding the improbability of Jiles's assertion that he did not remember the police chase and that he did not knowingly use methamphetamine did not shift the burden of proof to defendant to prove his defense. See *id*. at 116 ("When a defense makes an issue legally

---

[3] To the extent that Jiles contends that the trial court sustained defense counsel's objection on Fifth Amendment grounds, we disagree. Defense counsel's objection was clearly based on the ambiguous nature of the prosecutor's use of the word "we" in questioning Jiles.

relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence."). See also *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005) ("[A]ttacking the credibility of a theory advanced by a defendant does not shift the burden of proof.").

Even if the prosecutor's comments were improper, Jiles is not entitled to reversal under the plain-error rule because he cannot show prejudice. *Carines*, 460 Mich at 763. The trial court instructed the jury that the lawyer's arguments were not evidence and that it should only accept the lawyer's comments if supported by the evidence. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). More importantly, even if the prosecutor's closing argument was construed as commenting on Jiles's failure to assert an involuntary intoxication defense before trial, it is clear that Jiles was not prejudiced because the jury acquitted him on an additional charge of possession of methamphetamine. In any event, there was substantial police officer testimony and dashboard camera video that presented the events of the police chase to the jury. Jiles admitted that he could not dispute the officers' testimony or the video. Based on Jiles's own admissions and the strength of the evidence offered at trial, Jiles has failed to establish prejudice. Accordingly, he has not shown that the prosecutor's comments constituted plain error affecting his substantial rights. See *Carines*, 460 Mich at 763. See also *People v Borgne*, 483 Mich 178, 201-202; 768 NW2d 290 (2009) (concluding that appellate relief was not warranted under *Carines* without proof of prejudice).

Jiles also asserts that his defense counsel was ineffective for failing to object to the prosecutor's comments. However, this issue is not properly before this Court because it is outside the scope of Jiles's statement of the question presented. MCR 7.212(C)(5); *People v Mysliwiec*, 315 Mich App 414, 420; 890 NW2d 691 (2016). Even if this issue had been properly presented, Jiles would not be entitled to appellate relief because he cannot establish an ineffective assistance of counsel claim on this basis. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). The prosecutor's closing argument was not improper, and counsel is not ineffective for failing to raise a meritless objection. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Furthermore, as already explained, Jiles was not prejudiced by counsel's failure to object to the prosecutor's comments because he was acquitted of possession of methamphetamine, the jury was properly instructed that the attorneys' arguments were not evidence, and there was substantial evidence of Jiles's guilt as it related to the remainder of the charges. It is, therefore, unlikely that the outcome of the proceedings would have been different if defense counsel had successfully objected to the prosecutor's argument. *Sabin (On Second Remand)*, 242 Mich App at 659.

Finally, Jiles asserts that the trial court abused its discretion in admitting evidence of condoms found during a search of his semitruck. We disagree.

"The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670

NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). As a general rule, we will not find an abuse of discretion when the trial court's ruling involves a close evidentiary question. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

MRE 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In addition, MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, after testimony concluded on the second day of trial and outside of the presence of the jury, Jiles objected to the prosecution's intent to admit evidence of condoms that the police discovered during the search of the semitruck. Jiles argued that the condoms were irrelevant to the charged offenses and that any limited relevance was outweighed by the risk of unfair prejudice. According to Jiles, the evidence was only offered to make him "look bad" because he was married and away from his wife. In response to the prosecutor's assertion that the condoms were relevant to Jiles's knowledge of the presence of the gun, Jiles argued that the prosecutor had sufficient, nonprejudicial evidence to establish knowledge.

The trial court denied Jiles's motion to exclude the evidence, stating that whether the prosecution had enough other evidence was not the proper test. Instead, the trial court had to examine the probative value of the proposed evidence. The trial court opined that there was a logical connection between the gun and the condoms in this case because the gun was in a Walmart bag and a receipt found in the semitruck indicated that Jiles had recently purchased condoms at Walmart. Thus, the trial court explained that the presence of the condoms in the truck was "some evidence" that Jiles knew the gun was in the truck. Further, the trial court explained that the probative value was not substantially outweighed by the slight danger of unfair prejudice because people are encouraged to use condoms, which are often advertised on television and in print.

Based on the foregoing, we do not believe that the trial court abused its discretion in allowing the evidence of the condoms to be presented at trial. Although Jiles eventually admitted that he possessed the gun in the semitruck, he pleaded not guilty to felon-in-possession, carrying a concealed weapon, and felony-firearm. As a result, the prosecutor was required to prove beyond a reasonable doubt that Jiles had possession of the gun, which could be established by evidence of constructive possession, i.e., knowledge of the firearm in a reasonably accessible location at the time of the offense. See *People v Burgenmeyer*, 461 Mich 431, 437-439; 606

-5-

NW2d 645 (2000). See also *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998) ("Because the prosecution must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements, the elements of the offense are always 'in issue' and, thus, material.").

Police officers discovered the gun in the sleeping area of the semitruck, wrapped in a Walmart bag and placed between two pillows inside of a single pillow case. Officers also discovered several items—including the condoms—and a receipt showing that Jiles recently purchased those items at Walmart. Although the gun was placed in Jiles's sleeping area, it was possible that Jiles would argue at trial that the gun was placed there without his knowledge. In fact, he testified that the truck belonged to his boss. As the trial court reasoned, the jury could infer from this evidence that Jiles purchased the condoms from Walmart, removed the condoms from the Walmart bag, placed the gun in the Walmart bag, and then placed it between the pillows on his bed. While we recognize that the same point could have been made without identifying the items that were purchased from Walmart, we cannot conclude that the trial court's determination that the condoms were relevant to Jiles's knowledge of the gun fell outside the range of reasonable and principled outcomes. *Douglas*, 496 Mich at 565. We also agree that the risk of unfair prejudice arising from this evidence was slight, especially in light of the fact that the condoms were mentioned by only one witness and not discussed by the prosecutor in closing arguments. Therefore, the trial court did not abuse its discretion by refusing to exclude the evidence under MRE 403. *Id.* See also *Sabin (After Remand)*, 463 Mich at 67 ("[T]he trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion.").

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica

-6-