# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BILLY JOE HAMMONDS,

Defendant-Appellant.

UNPUBLISHED
November 15, 2018

No. 336958
Chippewa Circuit Court
LC No. 16-002031-FH

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction for third-degree criminal sexual conduct (CSC-III) (victim at least 13 and under 16 years of age), MCL 750.520d(1)(a). We affirm.

## I. BACKGROUND

AM was 15 years old in the summer of 2015. At that time, AM was enrolled in a driver's education course that was taught across the street from the apartment of her adult cousin, TL. As a result, AM spent occasional nights at TL's apartment to reduce the travel time necessary to attend the course. TL had an on-again, off-again romantic relationship with defendant, who was 26 years old.

According to AM, she met defendant while staying with TL. AM testified that defendant would flirt with her and put his hand on her knee and that she liked his tattoos. Approximately one week after they met, defendant and AM were watching a movie with TL, who eventually went to bed alone. Defendant laid on the couch and asked AM to lie next to him. When AM complied, defendant put his hands down her pants and she put her hands down his. The two then engaged in sexual intercourse.

Sometime after the act, defendant and AM exchanged communications via Facebook's Messenger application. AM sent a message to defendant saying that she was "legal" and attached a picture of her driver's permit. Defendant responded, "Not for sex though." AM replied, "Just because I ain't legal doesn't mean shit." Defendant sent the message "ha ha" in response. AM then followed up with, "Just saying didn't stop us before." Defendant replied, "Ha ha, yup." Defendant told AM to keep their sexual encounter a secret. Even so, AM became

-1-

aware that defendant was telling others of the incident. AM sent defendant a message confronting him and defendant replied, "[W]ell there ain't shit to tell."

AM told a friend, MC, of her encounter with defendant. AM also confessed to TL, who indicated to AM that she was already aware of the encounter. MC told her mother, and AM's mother was alerted. AM's mother confronted AM and TL in the presence of defendant's cousin, who also occasionally stayed at the apartment. AM initially denied having sex with defendant, and explained at trial that she did not want to admit the act to her mother. Nevertheless, AM's mother examined AM's phone and discovered screenshots of the communications exchanged between the two. Eventually, AM admitted that the encounter did occur.

AM, her mother, and her mother's husband filed a police report. After AM's classmates learned about the encounter and investigation, AM was bullied to the point where she refused to go to school. Defendant was interviewed by the police, and denied having sex with AM. Later, an arrest warrant was issued for defendant. When police arrived to execute the warrant, defendant was spotted leaving the building with a woman. Defendant was arrested and placed in the back seat of a police cruiser, where he volunteered information without being questioned. Defendant explained that he was attempting to leave his apartment because he heard that the police were on their way by using a police scanner and "didn't want to deal with the police." Defendant also stated that he thought the police were called only because he and the woman were making too much noise. When defendant was informed that he was being arrested on the basis of an arrest warrant for CSC charges, defendant stated that a 16-year-old girl that he did not know said that they had sex.

The jury found defendant guilty of CSC-III, and he was sentenced as a fourth-offense habitual offender, MCL 769.12, to 14 to 60 years of imprisonment. Following his conviction, defendant moved this Court to remand this case for presentation of his claims of ineffective assistance of counsel at an evidentiary hearing. This Court granted the motion.[1] The trial court then held an evidentiary hearing and denied defendant's claims of ineffective assistance of counsel.

This appeal followed.

## II. ANALYSIS

*Prosecutorial Misconduct.* On appeal, defendant first raises two claims of prosecutorial misconduct. Prosecutorial misconduct issues are decided on a case-by-case basis. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "We review the prosecutor's statements in context to determine whether the defendant was denied a fair and impartial trial." *Id*. The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Generally, prosecutors are given great latitude regarding

---

[1] *People v Hammonds*, unpublished order of the Court of Appeals, issued October 23, 2017 (Docket No. 336958).

their arguments and are "free to argue the evidence and reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

First, defendant contends that the prosecutor improperly shifted the burden of proof to defendant during her rebuttal closing argument. Defense counsel argued in her closing argument that the prosecutor's failure to present TL or defendant's cousin as a witness meant that they would testify in defendant's favor. The prosecutor responded in her rebuttal that, if TL or the cousin had testimony that could help defendant's case, he could have called them as witnesses.

Ordinarily, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). A prosecutor's comment on a defendant's failure to call a witness, however, does not shift the burden of proof unless the prosecutor's comment implicates the defendant's right not to testify. *People v Fields*, 450 Mich 94, 112; 538 NW2d 356 (1995). Rather, such comments merely point out weaknesses in the defendant's case. *Id*. The *Fields* Court explained that

> The defendant's decisions about evidence other than his own testimony do not implicate the privilege [against self-incrimination], and a comment on the defendant's failure to call a witness does not tax the exercise of the privilege. It simply asks the jury to assess the value of the existing evidence in light of the countermeasures that were (or were not) taken. [*Id*. at 114-115 (cleaned up).]

In this case, the prosecutor's comment regarding defendant's failure to call a witness did not impinge defendant's right not to testify at trial. No statements were offered by either party that brought defendant's right not to testify before the jury's attention, and, regardless, defendant ultimately did testify in his own defense. The challenged statement was not an improper attempt to shift the burden of proof; rather, it was a proper explanation of the parties' rights to present witnesses in response to defense counsel's closing argument. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001). Moreover, the trial court properly instructed the jury that the prosecutor bore the burden of proof, meaning that defendant cannot show prejudice from the challenged comment. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Thus, defendant's first claim of prosecutorial misconduct is without merit.

Defendant also argues that the prosecutor engaged in misconduct when she and her witnesses repeatedly referred to AM as "the victim" despite an order from the trial court to refer to her as "the complaining witness" instead. We disagree.

In this case, the trial court made a pretrial ruling that the parties and their witnesses were to refrain from using the word "victim" as opposed to "complaining witness." Over the course of trial, the prosecutor used the word "victim" four times when specifically referencing AM and three more times without specifically referencing AM. Moreover, two of the prosecutor's witnesses—both police officers—referred to AM as "the victim" in their testimonies.

Having reviewed the record, we are unable to conclude that the use of the term "victim" denied defendant a fair trial. Although the prosecutor did refer to AM as the victim on occasion,

she usually quickly corrected herself to use a different moniker. There is no indication that the prosecutor knew that her witnesses would refer to AM as the victim or that she intentionally elicited such a response and, although the term victim was used at other points at trial, these references were not directed towards AM. Moreover, the trial court specifically instructed the jury that AM was to be referred to as the "complaining witness" rather than the "victim." This instruction cured any prejudice to defendant, rendering his second claim of prosecutorial misconduct without merit. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

*Judicial Partiality*. Defendant next argues that reversal is warranted because the trial court demonstrated that it was biased in favor of the prosecutor when it held that AM's responses to defense counsel's questions were "misunderstandings" rather than inconsistencies. Criminal defendants have a right to a fair and impartial jury trial. *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Id*. at 170-171. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171.

During the first day of trial, defense counsel began questioning AM about her prior statements, attempting to emphasize inconsistencies. While cross-examining AM, the following exchange took place:

> *Q*. Do you recall telling Detective Harp that it was [TL] and [defendant] that were dating at the time?
>
> *A*. They were sleeping together, yea.
>
> *Q*. Do you recall testifying back in March that it was [another person] and [TL] that were dating at the time?
>
> *A*. Yea.
>
> *Q*. And now today it's they're both dating her?
>
> *A*. No, I don't think that either one of them are dating her now. But back in the summer they were both bouncing around with her, yea.
>
> *Q*. So that would [be] three inconsistent statements that you've given us.

The prosecutor objected, arguing that defense counsel's statement was improper and that AM's last statement did not constitute an inconsistency. The trial court sustained the objection, stating,

> I don't think it's inconsistency but it might just be some misunderstanding. I don't think it's intentional. I think it's just mistaken so if you want to rephrase the question. I know what you're trying to get at . . . . But for that point I'll sustain the objection.

Defense counsel then asked whether AM's previous indication that TL and defendant were dating was consistent with a previous indication that TL and another person were dating. AM stated that she did not recall testifying that TL and the other person were "dating." Rather, she remembered stating that they were sleeping together.

Having reviewed the challenged ruling, we are unable to conclude that the trial court pierced the veil of judicial impartiality. The trial court was not ruling definitively that the witness did not testify inconsistently. Rather, taken in context, the trial court was merely pointing out that defense counsel and the minor witness appeared to be misunderstanding each other, specifically with regard to the use of the word "today." The trial court did not preclude the line of questioning altogether, but rather encouraged defense counsel to continue exploring the issue. Defense counsel did so, specifically targeting the alleged inconsistency between AM's trial testimony and previous statements. Thus, it is clear that the trial court was merely attempting to ensure accuracy in the proceedings and did not abandon its veil of impartiality. Defendant's claim is without merit.

*Offense Variable 10.* Defendant next argues that 10 points were improperly assessed under offense variable (OV) 10. Ten points are properly scored under OV 10 where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

At the time of the encounter, AM was 15 years old and was temporarily staying with her young-adult cousin, TL. Defendant was 11 years AM's senior and groomed AM by flirting with her and touching her while she was outside of her parent's care. Defendant waited to pursue the sexual encounter until after TL had gone to bed, when AM would be without any other immediate means of leaving the apartment. Aware of his wrongful conduct, defendant instructed AM not to tell anyone about the encounter. Thus, the record is clear that defendant intentionally pursued AM and was successful in doing so in large part because AM was a vulnerable minor. See *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008). The trial court properly assessed 10 points under OV 10.

*Ineffective Assistance of Counsel.* Defendant claims that his defense counsel was constitutionally deficient. A preserved claim of ineffective assistance of counsel is "a mixed question of law and fact." *People v Hunter*, 493 Mich 1015; 829 NW2d 871 (2013). We review questions of law de novo and "the trial court's factual findings for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (cleaned up).

An appellate court is required to reverse a defendant's conviction when defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

Defendant first argues that he was denied his right to effective assistance of counsel when defense counsel failed to call TL as a witness at trial. Defendant asserts that TL's testimony would have corroborated his version of the facts and cast significant doubt on the veracity of AM's allegations. The record shows, however, the defendant counsel attempted to contact and subpoena TL several times for trial. After defense counsel, county officials, and the police tried and failed to reach TL, it was reasonable for defense counsel to believe that TL would not be available to provide testimony at trial. Thus, defendant has failed to show that his defense counsel's performance was deficient.

Defendant, in his Standard 4 brief, also argues that defense counsel was ineffective for failing to inform him of the possible penalty that would have followed from accepting an offered guilty plea. Specifically, defendant alleges that he was offered a plea for one count of CSC-III as a second-offense habitual offender, and that defense counsel informed him that his minimum sentencing range under that plea would have been between 78 and 162 months of imprisonment. Defendant contends that the correct range would have been 51 to 106 months, and that if defense counsel had advised him accordingly, he would have accepted the offered guilty plea.

Assuming arguendo that defense counsel did advise defendant of a 78-to-162-month guidelines range, were are unable to conclude that such advice was unreasonable. Indeed, the record shows that, given the resolution of certain factual questions at issue, defendant's guidelines range could have been 78 to 162 months. Defendant was assessed 47 points for prior record variables and 10 points for offense variables. We have already concluded that the trial court properly scored OV 10 at 10 points. Moreover, an argument could be made for an assessment of an additional 60 OV points. OV 4 could have been scored at 10 points for the psychological injury AM suffered after being bullied by her classmates for the encounter, MCL 777.34(2); OV 11 could have been scored at 25 points given evidence that defendant penetrated AM during the encounter, MCL 777.41(1)(b); and OV 13 could have been scored at 25 points given that evidence existed that defendant was charged with committing three other crimes within five years of committing the instant offense, MCL 777.43(1)(c). Had the trial court not resolved these determinations in defendant's favor, defendant's guidelines range would have been 78-to-162 months. See MCL 777.63; MCL 777.21(3)(a). Thus, defendant's second ineffective-assistance claim is also without merit.

*Arraignment*. Finally, defendant, in his Standard 4 brief, argues that the trial court failed to arraign him on the charge ultimately levied against him. The register of actions in this case indicates that defendant was arraigned on March 29, 2016, at which time he stood mute to the

charge against him. The record makes clear that defendant had notice of the charge and defendant's claim that the trial court lacked jurisdiction over him because of the alleged failure to arraign is without merit.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle