*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PANAGIS SYRIGOS,

      Defendant-Appellant.

UNPUBLISHED
November 19, 2019

No. 343484
Livingston Circuit Court
LC No. 17-024535-FH

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (victim under 13 years of age); MCL 750.520c(1)(b)(ii) (offender related to the victim), and two counts of assault with intent to commit CSC II, MCL 750.520g(2). He was sentenced to serve concurrent terms of 4 to 15 years in prison for the CSC II convictions and 2 to 5 years in prison for the assault convictions. Defendant appeals as of right, and we affirm.

## I. BASIC FACTS

The complainant, MU, lived in Michigan with her mother. She liked to visit with her aunt and uncle, defendant, a couple times a month. During the visits, they would make crafts, visit antique stores and parks, watch movies, and play video games. When the complainant was 15-years old, she was playing video games with defendant when he took her hand and placed it on his upper thigh. The complainant returned her hand to her phone, but defendant kept moving her hand back to his lap, making her feel confused and uncomfortable. Later that day, defendant took the complainant's feet, rubbed them, and placed them closer to his groin until her feet touched his erect penis. The complainant left to go to the bathroom and sat further away from defendant when she returned. Additionally, at a Mardi Gras party at defendant's home, defendant touched the complainant's thigh and moved his hand to her rear end and "rubbed it in circles," although there were other people present. Finally with regard to charged conduct, the complainant testified she was seated next to defendant on a futon when her aunt left to pick up a pizza. Defendant began to tickle the complainant. When her shirt rose up, defendant began to rub her stomach and moved his hand toward her vagina.

The complainant also testified regarding an uncharged act when she attended a movie with defendant, and he moved the armrest to touch her thigh and her vagina with one hand and "cupped" her breast with the other. The complainant currently lived in Arkansas after asking to live with her father. Eventually, the complainant disclosed defendant's conduct to a teacher after having a nightmare that she told her parents of the abuse, but they did not believe her, and defendant's abuse continued. Although defendant did not testify, his counsel proffered that the complainant's inability to recall certain details, such as the name of the movie that she saw, indicated that the conduct described was merely a dream, and it was implausible that defendant would engage in such conduct in the presence of others. Despite this theory, defendant was convicted as charged.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first alleges that the trial court violated his due process rights because the 16-year old complainant was permitted to testify when accompanied by a support dog, contrary to statutory authority, and that counsel was ineffective for failing to object. Defendant also contends that trial counsel was ineffective for failing to exercise a peremptory challenge to remove a juror that was a victim of child sexual abuse. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "Generally, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). Because there was no *Ginther*[1] hearing held in the trial court, appellate review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To demonstrate that trial counsel was not effective, the defendant must show "(1) that defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *Lane*, 308 Mich App at 68. "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

### A. SUPPORT DOG

We first note that defendant waived his due process claim of error by affirmatively approving the trial court's decision to allow the complainant to testify while accompanied by the support dog in conjunction with a jury instruction regarding the lack of consideration given to the presence of the animal. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Furthermore, defendant's ineffective assistance of counsel claim is without merit.

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

In *People v Johnson*, 315 Mich App 163, 171, 175-178; 889 NW2d 513 (2016), this Court held that, although a Michigan statute permitted the use of a support "person" to accompany a witness, the trial court had the inherent authority to control courtroom procedure and allow a support animal "to ease the situation for a traumatized or fearful young witness while at the same time allowing the jury and the defendant to view the witness while testifying." The *Johnson* Court also rejected a challenge to the effective assistance of counsel on due process grounds. *Id*. at 179-182. The Court noted that courtroom procedures may be deemed inherently prejudicial, but where there was no indication that the support dog was visible to the jury, no indication that the dog barked, growled or otherwise interrupted the proceedings, or made his presence known to the jury, such that a challenge to a due process violation by counsel would have been meritless. *Id*. at 181-182.

Similarly, in the present case, the trial court arranged for the then 16-year old complainant to take the stand with the support dog. The dog's handler was off to the side, approximately ten feet away. According to the trial court, the dog would not be visible to the jury unless possibly it wagged its tail. The trial court instructed the complainant and the dog's handler not to stand up for the jury's entrance to avoid disrupting the dog. Finally, when the jury entered the courtroom, the trial court gave an instruction regarding the purpose of the dog in relationship to the witness and the lack of consideration the jury should give the dog. Under the circumstances, defense counsel's objection to the use of the support animal on due process grounds would have been meritless.

Defendant further contends that the permitted use of a support animal was limited by this Court in *People v Shorter*, 324 Mich App 529, 542; 922 NW2d 628 (2018), to prohibit "a fully abled adult witness" from being accompanied by a support animal while testifying. Additionally, the Legislature amended MCL 600.2163a(4) to provide for the use of both support persons and support animals, but limited their use to witnesses under the age of 16, over the age of 16 with a developmental disability, or a vulnerable adult, MCL 600.2163a(1)(g). Because the complainant had turned 16-years old two months before trial commenced, defendant contends the *Shorter* decision as well as MCL 600.2163a(1)(g) require reversal and remand for a new trial without the use of a support animal.

However, we apply the law in effect at the time defendant committed the crime. See *People v Becoats*, 181 Mich App 722, 727; 449 NW2d 687 (1989). The complainant estimated that the incidents occurred between the ages of 13 and 15 years old, and utilized seasons and holidays to place the occurrences in context.[2] The *Johnson* decision was issued on April 9, 2016. Defendant was tried on February 26-27, 2018, when the complainant was 16-years and two months old. The *Shorter* decision was issued on June 7, 2018. Furthermore, the Legislature amended MCL 600.2163a effective January 14, 2019, to expressly allow for the use of support animals and to limit witness usage by age, developmental disability, and vulnerability. Thus, at the time of defendant's trial, the *Johnson* Court was the prevailing authority on the use of support animals and provided that an animal's use was

---

[2] Because of the complainant's estimation of the date of the offenses, we cannot conclude the exact date of every charged crime, however, time is not of the essence or a material element in criminal sexual conduct cases where the victim is a child. *People v Dobek*, 274 Mich App 58, 83; 732 NW2d 546 (2007). More importantly, on appeal, defendant relies on changes to the law that were decided after the trial was held in this case.

appropriate "to ease the situation for a traumatized or fearful young witness." In the present case, the complainant testified to sexual acts when she was between the ages of 13 and 15, and the offender was her uncle. Additionally, her report of the sexual assaults divided her family. In light of the trial court's inherent authority to control courtroom procedure and allow the support animal in accordance with the applicable caselaw available at the time, we find no error. Therefore trial counsel was not ineffective under the circumstances.

## B. JURY SELECTION

Trial counsel was also not ineffective for failing to peremptorily excuse "juror M." During jury selection, *several* jurors disclosed that they were child victims of sexual assault or their own children had been the victims of sexual assault during childhood. During juror introductions, "juror J" became so upset he was called to the bench and excused from the proceedings. During juror questioning of the ability to be impartial, "juror S" disclosed that his two-year child was molested by a relative, but opined that he could nonetheless remain impartial. Additionally, "juror ES" disclosed that she had been assaulted at age 13, her attacker was never prosecuted, and she could not sit on this jury. "Juror R" disclosed that she adopted children that were abused by their biological parents, and she could not set aside prejudice under the circumstances. "Juror K" disclosed that she was abused as a child and could not be certain that she would be impartial. Thus, the court dismissed four of these potential jurors for cause in light of their emotional responses. However, "juror M," challenged in this appeal, also disclosed that she had been the victim of sexual assault as a child, but was nonetheless selected to serve during the trial. "Juror M" stated that although she was sexually assaulted when she was an elementary school-aged child, it did not affect her ability to be impartial towards either party. Defense counsel later followed up by asking "juror M" how she felt when she heard what the subject of the case would be, and she responded "Nothing . . . heart wrenching or anything like that," and further indicated that she felt she had put the matter behind her "20 years ago" when she was a college student.

Moreover, defendant's claim that trial counsel was ineffective for failing to dismiss "juror M" is not supported by the record. Trial counsel asked additional questions of the juror after she was questioned by the trial court, and apparently, he reasonably believed that her responses were truthful. Given counsel's reaction to the other jurors who disclosed similar information, it appears that counsel was deliberate and made an individualized evaluation and determined that "juror M" could be fair. It was not unreasonable for trial counsel to have determined that it made strategic sense to keep "juror M," as she not only disclosed that she had been assaulted but also indicated that she felt she had "moved beyond" the experience and did not have an emotional reaction to the subject of the case. The record does not show that trial counsel was ineffective during jury selection.

## III. OTHER ACTS EVIDENCE

Next, defendant alleges that the trial court improperly admitted evidence pursuant to MCL 768.27a of an uncharged incident of sexual contact, and the overwhelming prejudice of this evidence requires reversal. We disagree.

The trial court's decision to admit other-acts evidence is reviewed for an abuse of discretion. *People v Henry*, 315 Mich App 130, 140; 889 NW2d 1 (2016). MCL 768.27a provides that in sexual assault cases, "evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In *People v*

*Watkins*, 491 Mich 450, 475; 818 NW2d 296 (2012), our Supreme Court held that MCL 768.27a irreconcilably conflicted with MRE 404(b), and that the statute prevailed over the court rule. However, the Court stated that the statute remained subject to MRE 403. While the MRE 403 analysis included a propensity analysis, the possibility that the jury might conclude that the defendant had a propensity did not weigh against admission. *Id*. at 486-487. Further, the Court stated that in determining whether this evidence should be excluded under MRE 403 as overly prejudicial, a court should consider:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id.* at 487-488.]

In the instant case, defendant claims that the complainant's testimony regarding the incident in the movie theater was "minimally relevant" to the charged offenses and likely caused the jury to convict defendant in what was otherwise a "relatively weak" case. Although defendant correctly notes that the trial court did not conduct an extensive propensity analysis of the evidence on the record, the trial court did not abuse its discretion by admitting the evidence pursuant to MCL 768.27a, MRE 403, and *Watkins*.

At trial, defendant argued that the complainant's claims that he had touched her breast and vaginal area at the movie theater were "more serious" than the conduct that formed the basis of the charged offenses, and thus was more prejudicial than probative of the charged offenses. This argument is not persuasive. The incidents underlying the charged offenses included conduct that was prohibited under the statute, as did the incident at the movie theater. See MCL 750.520a(f), (q); MCL 750.520c. The complainant testified that when she was at defendant's home, he repeatedly placed her hand on his upper thigh; rubbed her feet against his (clothed) penis; touched, rubbed, and grabbed her buttocks; touched and rubbed her "bare" stomach; and put his hand beneath the waistband of her leggings. Thus, the record clearly supports a finding that the incident in Ann Arbor was quite similar to the charged incidents. Accordingly, it was not unfairly prejudicial for this reason.

Similarly, it does not seem likely that the jury confused the issues or was misled by the other-acts evidence. See MRE 403. The evidence was similar enough to the charged conduct that it was not likely the jury was confused about the issues before them, and defendant cites no such record evidence. Further, the court tried to mitigate any confusion when it instructed the jury that if it found that the defendant had committed the other acts, it could "consider them in deciding if the defendant committed [the] offenses for which" he was on trial, but could not find him guilty solely on the basis of its conclusions regarding the other-acts evidence. Lastly, the record does not support a finding that the evidence should have been excluded based on "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See MRE 403.

Defendant argues that the other acts differed from the charged offenses too much to be admissible based on the considerations set forth in *Watkins*. We are not persuaded by this argument. First, the movie theater incident occurred during the same time period as some of the charged offenses. See *Watkins*, 491 Mich at 487. The complainant testified that two of the incidents underlying the charged offenses occurred when she was visiting defendant and other relatives in Michigan in December 2016, when she was 15 years old, while all of the other incidents underlying the charged offenses, as

well as the other-acts incident, occurred between 2013 and 2015, when she was a middle school student in Michigan. Thus, some of the charged offenses occurred in close temporal proximity to the other acts incident. See *id*.

Next, the Court in *Watkins* suggested that courts should consider whether other-acts evidence should be excluded under MRE 403 based on the "infrequency" of the acts. *Watkins*, 491 Mich at 487. While the particular form of sexual contact described by the complainant in her testimony regarding the other-acts evidence only occurred during that incident, all of the incidents were sufficiently similar in nature that the court was not required to exclude the evidence based on "the infrequency of the other acts." *Id.* Additionally, the complainant testified that the other acts incident occurred the day after one of the incidents that resulted in the charged offenses. Thus, there were no intervening acts that would cause a court to conclude that the evidence was not admissible pursuant to MRE 403. See *id*.

Finally, the Court in *Watkins* stated that a trial court should consider the reliability of the evidence and the "lack of need for evidence beyond the complainant's and the defendant's testimony" in deciding whether to admit the other-acts evidence. *Watkins*, 491 Mich at 487-488. These considerations are not directly applicable in the instant case. The only evidence presented concerning the charged offenses or the other acts incident was the complainant's testimony. Defendant exercised his right not to testify, and no other evidence was presented by the defense. Thus, there was no issue regarding the "reliability" of the other acts evidence that would not also apply to evidence of the charged offenses. Because the reliability of the evidence rested on the complainant's credibility, this was an issue that the court properly left for the jury to decide. See *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Thus, the trial court did not abuse its discretion by admitting the other-acts evidence.

## IV. PROSECUTORIAL MISCONDUCT

Finally, defendant submits that the prosecutor committed misconduct in her closing argument by improperly commenting on defendant's right not to testify and thereby shifted the burden of proof from the prosecution to defendant. We disagree.

While discussing the complainant's testimony that defendant had placed her hand on his upper thigh, the prosecutor stated, "There's no evidence to contradict that. She wasn't impeached on it. No one ever questioned whether or not the count was true." Defendant argues that these statements improperly suggested that he should have presented evidence or testified in his own defense to counter the complainant's testimony. Defense counsel did not the object to the closing argument. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 7; 897 NW2d 195 (2016). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003). Where a curative instruction would have alleviated the prejudicial effect of any prosecutorial questioning or comment, error requiring reversal has not occurred. *Id*. at 449. Instances of prosecutorial misconduct are to be evaluated "on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63.

Citing *People v Centers*, 141 Mich App 364, 377-378; 367 NW2d 397 (1985), defendant contends that a prosecutor exceeds the bounds of proper argument when she argues that the evidence

was not contradicted or explained if contradiction or explanation could only come from the defendant. However, after *Centers* was decided, a panel of this Court held that a prosecutor may comment that evidence is undisputed or uncontradicted, even where the defendant is the only person who could provide contradictory testimony. See *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991). Essentially, a prosecutor is prohibited from arguing that a defendant's silence is evidence of his guilt. *People v Fields*, 450 Mich 94, 110-111; 538 NW2d 356 (1995). "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *Id*. at 115. Therefore, the prosecutor may comment or observe that the evidence against the defendant is uncontroverted or undisputed. *Id*.

When considered in context, the prosecutor in this case did not comment upon defendant's silence or suggest that it was evidence of his guilt. Rather, the statements highlighted the fact that the complainant was not impeached by her prior statements during cross-examination and that no other evidence had contradicted her. The prosecutor also noted that on cross-examination, the only discrepancies or inconsistencies that defense counsel was able to find in the complainant's story were questions regarding whether she had previously testified that defendant had put his hand "at the waistband or below the waistband," and whether during prior testimony she had previously referred to a "nightmare" as a "dream." Viewed in context, the prosecutor's statements were not improper commentary upon defendant's constitutional right not to testify. The statements constituted proper argument that based on the evidence, the jury should decide that the complainant was credible. Moreover, after citing to the lack of contrary evidence, the prosecutor noted that the jury still had to conclude whether it believed the complainant's testimony.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto