*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CALEB CARL VERMETT,

        Defendant-Appellant.

UNPUBLISHED
March 05, 2025
10:50 AM

Nos. 367025; 367026
Lapeer Circuit Court
LC Nos. 2017-012945-FC; 2017-012946-FH

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant, Caleb Carl Vermett, of seven total charges of varying degrees of criminal sexual conduct (CSC) and indecent exposure[1] arising from two separate cases that were consolidated for trial. Vermett appeals as of right in each case. The appeals are also consolidated.[2] On appeal, Vermett argues the trial judge erred by failing to sua sponte excuse a prospective juror, his trial counsel was ineffective for failing to object to prosecutorial misconduct, and the cumulative effect of these errors warranted a new trial. We disagree and affirm Vermett's convictions and sentences.

---

[1] The jury convicted Vermett of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), and one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a), in LC No. 2017-012945-FC, and indecent exposure, MCL 750.335a, as a sexually delinquent person, MCL 750.10a, and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b), in LC No. 2017-012946-FH. The trial court sentenced Vermett to concurrent prison terms of 25 to 40 years for each CSC-I conviction, 4 to 15 years for the CSC-II conviction, 5 to 15 years for the CSC-III conviction, one day to life for the indecent exposure conviction, and 365 days (time served) for the CSC-IV conviction.

[2] *People v Vermett*, unpublished order of the Court of Appeals, entered August 2, 2023 (Docket Nos. 367025 and 367026).

# I. FACTUAL OVERVIEW

Vermett, aged 41 at the time of trial, was convicted of sexually abusing his neighbor, HS, beginning when she was age eight, and culminating with him indecently exposing himself to her when she was 15. HS, aged 22 at the time of trial, testified that Vermett performed six specific sexual acts on her between 2008 and 2015, in a Lapeer County apartment building where both HS's family and Vermett's family resided. When HS was approximately 12 years old, she attempted to reveal the incidents to her mother, but her mother became angry and did not believe her. Subsequently, when HS was 15 years old, she used a cell phone to photograph Vermett, through the peephole of her apartment door, with his penis exposed while facing her apartment door. HS testified that Vermett was masturbating. HS shared the photograph with her parents and law enforcement, which ultimately led to her disclosing that Vermett had sexually assaulted her over several years.

Vermett testified at trial and denied sexually assaulting HS. Regarding the charge of indecent exposure, which led to the disclosure of the alleged acts of sexual assault, Vermett testified that he did not masturbate while facing HS's apartment door. While Vermett admitted that he was the person in the photograph with his penis exposed, he testified that he was instead in the midst of a sexual encounter with an apartment resident, Karina Schultz, when HS captured his photograph. By the time of trial, Schultz had purportedly passed away.[3] The prosecutor inquired on cross-examination why Schultz was not mentioned during the investigation or pre-trial hearings:

> *Q*. May of 2021. So [Schultz] was alive then on August 23rd, 2017?
>
> *A*. Yes.
>
> *Q*. Okay. You know that you have an opportunity to call witnesses at a preliminary examination if you choose; correct?
>
> *A*. If I choose, yes.
>
> *Q*. And you understand that if you call a witness at a preliminary examination and they are not otherwise available at a later time, that testimony can be admitted in court. You understand that; correct?
>
> *A*. I didn't know that, but I do now.
>
> *Q*. Okay. I'm going to show you the preliminary—you were represented by counsel; correct?
>
> *A*. Yep.

---

[3] The only evidence in the record of Schultz' passing was Vermett's somewhat equivocal testimony.

*Q.* I am going to show you both transcripts. I'm going to ask you to thumb through them and I'm going to ask you, did [Schultz] testify at either one of those proceedings?

*A.* I don't need to thumb through those to tell you, no.

*Q.* She did not testify at either one of those proceedings; correct?

*A.* Either one of them, no, no.

\* \* \*

*Q.* You did not call a witness at the preliminary examination?

*A.* No.

*Q.* Okay. You did not tell Larry Pack, Chief Pack that you had this witness; correct?

*A.* No.

*Q.* Okay. You did not obtain any type of affidavit or statement from her; correct?

*A.* Correct.

*Q.* You have not filed any motions or pleadings in the lower court asking that the court take a deposition of this particular individual; correct?

*A.* I did not.

Trial counsel did not object to this line of questioning. After hearing from witnesses for the prosecution and defense, a jury that included the niece of the trial court judge convicted Vermett as charged.

## II. DISQUALIFIED JUROR

Vermett first argues that he is entitled to a new trial because of the trial court's failure to sua sponte excuse a prospective juror, Juror 170, for cause. We disagree.

### A. BACKGROUND AND STANDARD OF REVIEW

Soon after the first 14 prospective jurors, which included Juror 170, were called to the jury box, the trial judge immediately disclosed that Juror 170 is his niece. The trial judge stated, "For purpose of full disclosure, there is a seated juror, Number 12, who's called [her name], who is my niece, just so you folks know." Subsequently, the prosecutor questioned Juror 170 about her relationship with the trial judge in the following exchange:

-3-

[PROSECUTOR]: Okay. As [the trial judge] has disclosed that you are his niece?

JUROR [170]: Yes, I am married to his nephew.

[PROSECUTOR]: Okay. Is that going to cause you—do you believe that's going to cause you some concerns as sitting as a prospective juror in this case?

JUROR [170]: Not necessarily. No.

[PROSECUTOR]: Okay. You are going to listen to the Court's instructions?

JUROR [170]: Yes.

[PROSECUTOR]: You will follow the instructions given?

JUROR [170]: Yes.

[PROSECUTOR]: Okay. You're not going to try to figure out what [the trial judge] would do?

JUROR [170]: No.

[PROSECUTOR]: Okay. Well, are there Christmases and Easter's and holidays—

JUROR [170]: Yes.

[PROSECUTOR]: —you have to see him?

JUROR [170]: Yes.

[PROSECUTOR]: If you render a verdict, and he asked you about it, would you be—are you a strong enough personality that you're going to stay [sic] by your verdict?

JUROR [170]: I believe so, yes.

In this case, defense counsel did not question Juror 170 about her uncle-niece relationship with the trial judge after it was disclosed at the outset of voir dire, and did not move to excuse her for cause or otherwise challenge her ability to sit on the jury. Therefore, we review this unpreserved claim for plain error affecting Vermett's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). On appeal, Vermett argues that taken together, this familial relationship, coupled with the somewhat qualified answers as well as the trial judge's strong feelings on Vermett, required the judge to sua sponte dismiss his niece from the jury pool.

## B. ANALYSIS

A "[d]efendant ha[s] the right to be tried by an impartial jury." *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). MCR 2.511(E)[4] establishes when a person may be excused from serving for cause. The court rule identifies several relationships that give rise to a presumption of bias. However, the relevant court rule, MCR 2.511(E)(8), provides that there is cause to excuse a juror if the prospective juror "is related within the ninth degree (civil law) of consanguinity or affinity *to one of the parties or attorneys*[.]" (Emphasis added.) Thus, this rule is clearly not applicable to Juror 170, who was related to the *trial judge*.

However, we have previously noted:

> The . . . grounds listed in MCR 2.511([E]) on which a party may challenge a juror for cause fall into two principal categories. The first is that the person is not statutorily qualified to act as a juror. The second is that the juror is biased, i.e., that the juror has preconceived opinions or prejudices, or such other interest or limitations as would impair his or her capacity to render a fair and impartial verdict. [*Eccles*, 260 Mich App at 382 (citation omitted).]

Vermett acknowledged in his brief in this Court that "a familial relationship between the judge and a juror does not smack of bias in the same way as when a juror has a relationship with one of the parties." Nevertheless, a juror's familial relationship to a trial judge *could* perhaps amount to "bias or prejudice at common law," *if* the party seeking dismissal of that juror offered proof of the same. *Eccles*, 260 Mich App at 383 (citation and quotation marks omitted). Here, Vermett does not. No such proof exists—certainly not on the trial record, where no objection was made, and not on the appeal record either.

Vermett highlights remarks made at sentencing to show the trial judge believed that he was guilty. But there is nothing to connect Juror 170 to those comments, aside from the acknowledged familial relationship and speculation. Additionally, during voir dire, Juror 170 expressed, albeit somewhat qualifiedly, that she would be able to render a fair and impartial verdict and follow the trial court's instructions. "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). Because Vermett has failed to establish any basis for the trial court to have excused Juror 170 for cause, we find no error.

## III. PROSECUTOR'S MISCONDUCT

Next, Vermett argues that the prosecutor improperly responded to the theory of the defense in cross-examination. Specifically, Vermett argues the prosecutor unfairly questioned him about his failure to call Schultz as a witness at the preliminary examination, or otherwise mention her or

---

[4] This provision was formerly MCR 2.511(D). Our Supreme Court renumbered this court rule effective January 1, 2024. See 512 Mich cxxii-cxxiii. Because the rule is unchanged in substance, we cite the current rule.

attempt to document her statement before trial. Vermett also argues that his defense counsel was ineffective for failing to object to the prosecutor's improper questions. We disagree.

## A. STANDARD OF REVIEW

As Vermett acknowledges, there was no objection to the challenged questions in the trial court, leaving this claim of prosecutorial misconduct unpreserved. Like the first unpreserved issue, we review this claim for plain error affecting Vermett's substantial rights. *Roscoe*, 303 Mich App at 648. However, unlike the first issue, Vermett here raises in the alternative that defense counsel was ineffective for failing to object to the prosecutor's improper questions. Our review of this claim is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

## B. ANALYSIS

We "must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, [p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted).

However, "[a] prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). "While the prosecution may not use a defendant's failure to present evidence as substantive evidence of guilt, the prosecution is entitled to contest fairly evidence presented by a defendant." *People v Caddell*, 332 Mich App 27, 71; 955 NW2d 488 (2020) (quotation marks and citation omitted). A prosecutor may comment on the defendant's failure to produce corroborating witnesses without shifting the burden of proof because the prosecutor is "merely pointing out the weaknesses in [the] defendant's case . . . ." *People v Fields*, 450 Mich 94, 112; 538 NW2d 356 (1995) (quotation marks and citation omitted).

In this case, only some of the challenged questions were part of a permissible response regarding Vermett's credibility. The challenged questions regarding whether Schultz ever testified at any proceedings, including the preliminary hearing, and about whether Vermett told Chief Pack that Schultz was a witness, were responsive to Vermett's testimony that he was not indecently exposing himself to HS but instead having intercourse with the now-deceased neighbor, Schultz. Given that Vermett proffered an alternative reason for why he was in the hallway when HS took his photograph, the prosecutor permissibly questioned him about the fact Schultz did not testify at the preliminary examination, and why he otherwise never mentioned Schultz to the police. The prosecution was allowed to question Vermett's failure to produce Schultz before her alleged death

-6-

because the prosecutor was "merely pointing out the weaknesses in defendant's case . . . ." *Fields*, 450 Mich at 112. Consequently, the prosecutor did not commit error or misconduct when asking Vermett about his failure to mention a corroborating witness before trial. There was no plain error in the prosecutor's cross-examination of Vermett.

And while it did not arise to plain error, we do caution against any cross-examination of a defendant on matters of trial strategy. Here, it was permissible to ask whether a potential alibi witness was mentioned to police or called to give testimony prior to her death. It is not permissible, in that it is irrelevant, whether a defendant understands how preliminary examination testimony can be later used at trial, and if a defendant understands the use of affidavits, motion practice, or depositions. We discourage prosecutors from asking defendants about matters of trial strategy, including knowledge of the law and criminal procedure, because doing so is outside a defendant's wheelhouse and could promote the revealing of attorney-client confidences on the record.[5] But because the omission of these questions from cross-examination would not have made a difference to Vermett's case, we find no error affecting Vermett's substantial rights. *Roscoe*, 303 Mich App at 648.

We also reject Vermett's related argument that defense counsel was ineffective for failing to object to the prosecutor's questions. As explained, the prosecutor's questions, which were responsive to Vermett's testimony in which he presented an alternate theory of the case, were mostly proper. Therefore, defense counsel's failure to object to the prosecutor's conduct on that basis was not objectively unreasonable. And even if it were, for the reason's stated above, there is no prejudice. Failure to "advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Consequently, Vermett's claim of ineffective assistance of counsel on this basis fails.

## IV. CUMULATIVE EFFECT OF ERRORS

In his last claim, Vermett argues that the cumulative effect of errors, i.e., a disqualified juror being impaneled and the prosecutor's misconduct, denied him a fair trial. Again, we disagree.

We review a cumulative error argument by examining the actual errors identified on appeal to determine whether the errors cumulatively deprived Vermett of a fair trial. See *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal," but this Court will not grant a new trial unless the cumulative effect of such errors "undermine[s] the confidence in the reliability of the verdict." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*. Vermett references his claims of a disqualified

---

[5] "A prosecutor should not question a defendant regarding conversations with his or her attorney, as the attorney-client privilege is fundamental to our system of jurisprudence and the privilege is destroyed if improper inference can be drawn from its exercise." *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007) (quotation marks and citation omitted).

juror being impaneled and the prosecutor's conduct when questioning Vermett on cross-examination that we previously rejected. Therefore, because Vermett has not identified any error, let alone several errors, that undermined the reliability of the verdict, there can be no cumulative effect of errors requiring reversal. *Id.*

Affirmed.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle